

Andy Beshear
Governor

Jamie Link
Secretary, Education and
Labor Cabinet

**Robin Fields Kinney**
Interim Commissioner of Education

**KENTUCKY DEPARTMENT OF EDUCATION**
300 Sower Boulevard • Frankfort, Kentucky 40601
Phone: (502) 564-3141 · www.education.ky.gov

March 5, 2024

Superintendent Larry Coldiron
Raceland-Worthington Independent Schools
100 Rams Boulevard.
Raceland, KY 41169

Mr. Brandon Music
311 West Main Street
Grayson, KY 41143

**RE:   IDEA Formal Complaint –** ~~[redacted]~~
**Agency # 2324-C-24**

Dear Parties:

Enclosed is the Report of Findings from the formal complaint filed by Brandon Music, on behalf of ~~[redacted]~~, against the Raceland-Worthington Independent Schools.

This report reflects the Findings of Fact and Conclusions of the Division of IDEA Monitoring and Results (DIMR). The Conclusions are specific to the District.

If you have questions or concerns, please contact Dr. Michelle L. Guy at michelle.guy@education.ky.gov.

Sincerely,

*Carol Ann Morrison*
Carol Ann Morrison, Director
Division of IDEA Monitoring and Results

cc:   Beckie Brown, Director of Special Education
      Gretta Hylton, Associate Commissioner, Office of Special Education and Early Learning
      Michelle L. Guy, Complaint Investigator
      Kristen Gleason, Parent
      W. Cravens Priest III, Attorney for Raceland-Worthington Independent Schools



# KENTUCKY DEPARTMENT OF EDUCATION
## REPORT OF FINDINGS
### Pursuant to 707 KAR 1:340, Section 8 STATE COMPLAINT PROCEDURES

| | |
|---|---|
| Student's Name: | ███████, hereafter referred to as Student |
| School District: | Raceland-Worthington Independent Schools, hereafter referred to as District |
| Complaint Number: | 2324-C-24 |
| Complainant: | Brandon Music, hereafter referred to as Complainant |
| Complaint Timelines: | Date Received: January 5, 2024<br>60-Day Timeline: March 5, 2024<br>Date of Report: March 5, 2024 |
| Complaint Investigator: | Dr. Michelle L. Guy, DIMR |
| Investigation Activities: | The investigation consisted of a review of documentation provided by the Complainant and District, including information provided in the original formal complaint, and documentation submitted by the District.<br><br>See the "Evidence and Documentation Considered" section below for a complete listing of all items considered in the development of this Report of Findings.<br><br>Federal regulations mirrored at 707 KAR 1:340, Section 8 (3) (h) do not permit formal complaint investigations to look at allegations that occurred more than one year prior to the receipt of the complaint. Therefore, the investigation timeline for this complaint is from January 5, 2023 through January 5, 2024, when the DIMR received the complaint. |

**INTRODUCTION:**

At the time the complaint was filed the Student was enrolled in an elementary school in the District. The Student has since enrolled at another elementary school in another district. The Student receives special education services under the Individuals with Disabilities Education Act (IDEA) category of autism.

The Complainant filed the formal complaint on behalf of the Parents of the Student. This complaint was filed by the Parent's attorney; however, the complaint included documentation that was provided by the Parent. A Family Educational Rights and Privacy Act (FERPA) release form signed by the Parent was provided allowing the Complainant to receive all information associated with this complaint.

The complaint contained some allegations which do not fall within the scope of an IDEA formal complaint, including allegations of a hostile learning environment and unlawful search of property/person. Thus, the KDE's jurisdiction in these matters is limited directly to alleged violations of the IDEA.

## EVIDENCE CONSIDERED:

- formal written complaint, received January 5, 2024
- documentation from the District to include:
    - attendance record
    - Individual Education Programs (IEP)s, dated November 14, 2022; November 8, 2023; December 6, 2023
    - Admissions and Release Committee (ARC) Conference Summary Reports, dated October 17, 2023; November 8, 2023; December 6, 2023
    - enrollment record printed from Infinite Campus (IC)
    - written communications between Parent and District
    - goal monitoring report for November 14, 2022 IEP
- Student schedule
- Parent Interview, February 22, 2024
- District staff interviews, February 21, 2024; February 26, 2024
- recordings from the classroom on October 2, 2023

## ALLEGATIONS/ISSUES:

The formal complaint issues brought forth by the Complainant include:

| Allegation | Citation | Issue(s) |
|---|---|---|
| **Issue #1:**<br><br>Whether the District implemented the Student's Individual Education Program (IEP). | 707 KAR 1:320, Section 1(1) | The Complainant alleged:<br><br>- No one-on-one instruction was taking place.<br>- There were times that only movies were shown during the Student's reading hour.<br>- There were times when the Student was out of his reading class and in another classroom. |

| Allegation | Citation | Issue(s) |
|---|---|---|
| In the event KDE finds additional IDEA violations during the investigative process, it is required to cite the District under the State Educational Agency's general supervision authority as established under 34 CFR 300.149. The additional issue identified by KDE includes: | | |
| **Additional Issue #2:**<br><br>Whether the IEP contained an explanation of the extent, if any, to which the Student would not participate with nondisabled children in regular classes. | 707 KAR 1:320, Section 5 (9) | The investigation revealed an Admissions and Release Committee (ARC) met on December 6, 2023, and determined the Student's placement would be homebound instruction. However, the ARC did not update the Student's IEP to reflect this change |

## **FINDINGS OF FACT (ISSUE #1):**

*Whether the District implemented the Student's Individual Education Program (IEP)*

1. The Parent hid a recorder in the Student's belongings after being informed of concerns affecting the Student as shared by a paraprofessional in the school.
2. The Parent stated during the interview that she sent a recording device to school with the Student for five days on October 2, 3, 5, 10, and 13, 2023.
3. In the formal complaint, the Parent only listed some audible statements that she heard from October 2nd and further stated, "I also learned that no one-on-one learning was being done and only movies were being played during his reading hour."
4. The Parent indicated the recordings revealed:
    a. movies being shown the five days she sent the recorder to school and
    b. reading instruction for three to five minutes, then a movie was shown.
5. The special education teacher was asked to provide lesson plans to the District for the resource reading class for the month of October.
6. These lesson plans included:
    a. stories the class was reading;
    b. activities that aligned with the stories; and
    c. video links for movies of the stories.
7. In interviews, another District staff member affirmed the lessons included a short video clip of a book that was being read in the classroom.

8. In one of the recordings submitted by the Complainant, a video could be heard in the background with an adult in the classroom pointing out one of the characters.
9. The Parent stated she could hear the Student being escorted to the resource class around 2:15 pm for what she assumed was reading.
10. The recordings obtained revealed that the Student was already in a classroom, based on what was heard in the background such as explanations of directions and ongoing conversations of others concerning the assignment.
11. An interview with a District staff member indicated that afternoon specially designed instruction (SDI) time started between 2:00 pm to 2:15 pm dependent upon the time the Student arrived in the resource classroom, and the afternoon resource time was for math and social emotional skills SDI; reading SDI occurred earlier in the school day.
12. Additionally, the Parent alleged, "[Student] was not in the resource room during reading, instead he was in [general education teacher's] class."
13. The recordings from October 2nd indicated the Student was in a classroom where the class was working on Halloween related activities while a video was playing in the background.
14. During an interview with District staff, it was clarified that the Student was in a general education classroom for Reading with SDI provided by the special educator in the resource room after the general education class was over.
15. A paraprofessional was also with the Student during the general education classes.
16. District staff indicated that the Student was in both a general education reading class as well as a general education Language Arts class.
17. A review of the Student's schedule indicated that the Student was in both a general education reading class and a general education Language Arts class.
18. The November 22, 2023 IEP, in place at the time the complaint was filed, indicated the Student received 60 minutes daily in a resource classroom for reading.
19. The Parent alleged the Student was not receiving the amount of SDI for reading in the resource room as included on the Student's November 22, 2023 IEP.
20. An interview with District staff indicated that the SDI time for reading was in the mornings before lunch and was after the Student's time in the general education setting for reading.
21. In the written complaint, the Parent stated that during a parent-requested ARC meeting held on October 17, 2023 she voiced her concern that the Student was not receiving 60 minutes per day in the resource room for reading as specified in the IEP.
22. A review of the Conference Summary Report notes for the October 17th meeting did not reflect any discussion related to the Parent's concern about IEP minutes not being fully provided.
23. When asked, the Parent stated that she did not remember discussion or brainstorming that took place regarding her written list of concerns which she had brought with her to the meeting.

24. A review of the Conference Summary Report notes for the October 17th meeting revealed that the Parent's concerns and questions included:
    a. concerns about the Student's communication
    b. the need for periodic breaks,
    c. the need for socialization
    d. the use of positive feedback as beneficial
    e. the need of visual strategies for reading
    f. the need for reinforcement of self-calming strategies
    g. the need for assistance in handwriting
25. Per the formal complaint, the Parent had stated that one of her concerns was no one-on-one instruction was taking place, however, that concern was not included in the October 17th Conference Summary Report.
26. A review of the November 22nd IEP revealed one-on-one instruction is only included as SDI under a goal written by the Occupational Therapist (OT) for assisting with handwriting activities.
27. No statements of the need for one-on-one instruction related to any academic work was included either in the IEP or corresponding Conference Summary Report.

**CONCLUSIONS OF LAW (ISSUE #1):**

1. Kentucky Administrative Regulations (KARs) at 707 KAR 1:320, Section 1 (1) required the District to ensure an IEP was developed and **implemented** for the Student (emphasis added).
2. It can be assumed that the Student was likely receiving reading instruction in a resource class given the provided lesson plans included the use of videos related to stories read in class with confirmation of this through the contents of the audio tapes and interviews with a District staff member who was not the special education teacher of the Student.
3. However, no documentation was provided by either party to support the allegation that the Student did not receive 60 minutes of SDI daily as specified in the Student's IEP.
4. Further, the District was under no obligation to provide one-to-one instruction to the Student during the reading class since this was not included under the SDI for the Student's reading goal(s), but rather was a part of the Student's OT services.
5. OSEP Letter to Reilly, 2014 states "…[the state education agency] SEA must independently review and weigh the evidence, generally by reviewing student and school records, data and other relevant information, and come to a determination supported by relevant facts."
6. The relevant facts in this case did not support the allegations under this issue. Thus, it is concluded that the District **is not in violation** of 707 KAR 1:320, Section 1(1).

## FINDINGS OF FACT (ISSUE #2):

*Whether the IEP contained an explanation of the extent, if any, to which the Student would not participate with nondisabled children in regular classes.*

28. As documented in the December 6, 2023 ARC Conference Summary, the ARC met and determined the Student would receive all instruction in the home/hospital setting.
29. A review of the December 6th ARC Conference Summary Report revealed the following discussion regarding a home hospital change of placement:
    a. reduction of special education service minutes for reading from 60 minutes daily to 20 per week
    b. reduction of special education service minutes for math from 30 minutes daily to 20 per week
    c. reduction of special education service minutes for social emotional from 30 minutes daily to 20 per week
30. The December 6th IEP did not reflect change of placement anywhere within the document with the exception of the Plan Amendments section on the front page which indicated changes were made to the program plan through an amendment process.

## CONCLUSIONS OF LAW (ISSUE #2):

1. Even though there was documented discussion meant for change of placement for home hospital services, the December 6th IEP did not appropriately reflect this revision. Additionally, even though the special education minutes referenced in Findings of Fact for Issue #2 were revised in the IEP to reflect the discussion documented in the ARC Conference Summary Report, the IEP did not indicate that these minutes were to be provided in the home hospital setting.
2. Kentucky Administrative Regulations (KARs) found at <u>707: KAR 1:350, Section 1 (3) (e)</u> stipulate that, "The continuum shall include the alternative placements of: (e) Instruction in hospitals and institutions."
3. Kentucky Administrative Regulations (KARs) found at <u>707 KAR 1:320, Section 5 (9)</u> state, "An IEP shall contain an explanation of the extent, if any, to which the child will not participate with nondisabled children in regular classes."
4. While the decision to accept and place the Student on home hospital was clearly made and documented by the ARC, the ARC failed to update the Student's IEP to reflect the accurate special education setting.
5. It is concluded that the District **is in violation** of <u>707 KAR 1:320, Section 5(9)</u> for failing to update the Student's IEP to reflect the appropriate special education setting after the decision was made by the ARC to change the Student's placement.

## CORRECTIVE ACTION PLAN (CAP):

Violations have been substantiated as a result of the complaint. Therefore, the following corrective actions will be required pursuant to 707 KAR 1:380, Section 2:

| Required Action | Documentation | Timelines |
|---|---|---|
| **Corrective Action Item #1**<br><br>Utilizing a KDE approved trainer, the District must provide training to the Student's ARC members regarding IEP development, focusing on LRE and change of placement documentation. | All training materials must be submitted to the DIMR CAP Manager at least 14 days prior to the scheduled training date for approval.<br><br>Copies of all training materials and a sign-in sheet from the training must be submitted to the DIMR CAP Manager. | All training to be completed by July 31, 2024. |

_Michelle Guy_  3/5/2024

Michelle L. Guy, Complaint Investigation Lead    Date
Division of IDEA Monitoring and Results
Kentucky Department of Education

_Carol Ann Morrison_  3/5/24

Carol Ann Morrison, Director    Date
Division of IDEA Monitoring and Results
Kentucky Department of Education

**APPEAL RIGHTS:**

Each party has separate rights to appeal this written decision to the Commissioner of the Kentucky Department of Education. The appeal shall be filed within 15 business days of the receipt of this decision by forwarding the appeal to the Interim Commissioner of Education, Robin Fields Kinney, at Kentucky Department of Education, Fifth Floor, 300 Sower Blvd, Frankfort, Kentucky 40601.

**Note: State and federal regulations do not provide for the suspension of issued corrective actions, if any, during the pendency of an appeal.**